# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 630 | **DATE** | 4/23/2003 |
| **CASE TITLE** | Ralph Nawrot vs. CPC International | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/15/03 at 10:00 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [45-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | APR 2 4 2003 | |
| | Notified counsel by telephone. | | | date docketed | 77 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | 4/23/2003 | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| DK | courtroom deputy's initials | | Date/time received in central Clerk's Office | DK mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RALPH NAWROT, ) | |
| ) | |
| Plaintiff, ) | Case No. 99 C 630 |
| ) | |
| ) | Magistrate Judge Morton Denlow |
| v. ) | |
| ) | |
| CPC INTERNATIONAL, ) | |
| n/k/a BESTFOODS, INC., ) | |
| a Corporation, ) | |
| ) | |
| Defendant ) | |

DOCKETED

APR 2 4 2003

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the Court on remand from the Seventh Circuit to resolve what

remains of plaintiff's reasonable accommodation and disability based discrimination claims.

*Nawrot v. CPC Int'l*, 277 F.3d 896, 899 (7th Cir. 2002). Defendant's motion for summary

judgment presents three issues: (1) whether a claim under the Americans with Disabilities

Act for an employer's failure to accommodate plaintiff's disability requires plaintiff to suffer

an adverse employment action; (2) whether an employee who does not need an

accommodation to perform his essential job functions can state a claim for his employer's

failure to accommodate his disability where the failure to accommodate may jeopardize his

life; and (3) whether plaintiff claims a failure to accommodate within 300 days of filing his

EEOC charge. The answer to the first question is no, and the answer to the other two

questions is yes. For the reasons below, this Court denies Defendant's motion for summary judgment.

## II. BACKGROUND

### A.    PROCEDURAL HISTORY

Ralph Nawrot ("Plaintiff" or "Nawrot") filed a three count complaint against his employer, CPC International n/k/a Bestfoods, Inc.("Defendant" or "Bestfoods"). Count I alleges that Bestfoods failed to reasonably accommodate his disability and discriminated against him because of his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Count II alleges that Nawrot's termination constituted retaliation for seeking an accommodation in violation of the ADA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*. Count III alleges Nawrot's termination was based on his age, violating the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq*. The district court granted Bestfoods' motion for summary judgment on all counts. *Nawrot v. CPC Int'l*, 99 C 630, 2000 U.S. Dist. LEXIS 8973, at *28 (N.D. Ill. June 22, 2000). The court held that Nawrot's ADA claims failed because he was not disabled within the meaning of the ADA. *Id.* at *18-19. The court also concluded that Nawrot failed to demonstrate that Bestfoods' proffered explanation for termination was pretextual and entered summary judgment for Defendant on the termination-based counts. *Id.* at 28.

2

On appeal the Seventh Circuit affirmed the district court's decision that Nawrot's termination was proper, but reversed the district court's decision as to whether he was disabled. *Nawrot v. CPC Int'l*, 277 F.3d 896, 905 (7th Cir. 2002). Nawrot demonstrated that he was a qualified individual with a disability that "substantially limits his ability to think and care for himself." *Id.* at 903, 905 The Court of Appeals remanded "for the district court to resolve whatever remains of Nawrot's reasonable accommodation and disability-based discrimination claims in light of [this] decision." *Id.* at 899. Furthermore, Nawrot is not claiming disparate treatment or disparate impact. The only issue remaining is whether Nawrot's reasonable accommodation claim can withstand Bestfoods' motion for summary judgment.

## B.    BACKGROUND FACTS

For the purposes of this motion, the following facts are undisputed. Bestfoods is an Illinois consumer foods manufacturer and distributor. Pl. Am. R. ¶ 1.[1] Nawrot began working for Bestfoods in 1976. Pl. Am. R. ¶ 3 He was promoted to warehouse supervisor in 1983 and was terminated in August 1998. Pl. Am. R. ¶¶ 12, 3. Bestfoods became aware that Nawrot was diabetic in 1980, and knew that his blood sugar levels required monitoring and that he needed to control these levels by eating certain foods. Pl. Am. R. ¶ 4-5.

---

[1] Citations are to the parties 56.1 statements of facts and take the following form: Pl. Amended Response to Defendant's Statement of Undisputed Material Facts is "Pl. Am. R."; Bestfoods' Answers to Plaintiff's Local Rule 56.1(b)(3) Additional Statement of Undisputed Material Facts is "Def. Ans."; Bestfoods' Supplemental Reply Memorandum In Support Of Its Motion For Summary Judgment is "Def. Sup. Rep."; Attachments to Plaintiff's Appendix of Materials Pursuant To Local Rule 56.1(b)(1) are "P. App. Att."

In September 1996 Nawrot suffered a diabetic reaction at work, and by 1997 his diabetes worsened. Def. Ans. ¶ 1-2. In February 1997 he took a medical leave to manage his diabetes and care for his health. *Nawrot*, 277 F.3d at 905. By this time, he required insulin injections three times per day and blood sugar level tests ten times each day. Def. Ans. ¶ 2. Without monitoring and maintaining his blood sugar levels, Nawrot was susceptible to diabetic attacks during which he is unable to think clearly or care for himself. Def Ans. ¶ 23, 28. He may make rude or nonsensical statements and behave inappropriately. Def. Ans. ¶ 23. Worse yet, if he falls into a diabetic reaction, Nawrot could become seriously ill or die. Def. Ans. ¶ 28. Nawrot had several "close calls" before suffering reactions in 1997 and 1998. Def. Ans. ¶ 29.

Given his condition, Nawrot requested an accommodation. Def. Ans. ¶ 1. Nawrot and his doctor made several requests to take breaks in order to monitor and maintain his blood sugar levels. Def Ans. ¶ 3. Specifically, Nawrot requested breaks to "take glucose and bring himself back to normal, if he feels a diabetic reaction coming on." P. App. Att. B. It was "imperative that he cease what he is doing and perform necessary measures to treat it so that he may continue to meet the responsibilities of his job." P. App. Att. B. His treatment includes eating certain foods throughout the day, but Nawrot was not allowed to eat or drink on the floor of the plant. Def. Ans. ¶ 25. Instead he was required to go to the plant office or locker room. *Id*.

Nawrot's doctor wrote two letters to Bestfoods in March 1997 requesting that Nawrot be allowed breaks to take glucose as needed. Def Ans. ¶ 3; P. App. Att. B. Nawrot asked his supervisor for an accommodation in January 1997 and in November 1997 when his supervisor actually witnessed one of Nawrot's reactions. Def. Ans. ¶ 5. Nawrot also asked the plant's Human Resources Manager for an accommodation on two occasions in February 1997. Def. Ans. ¶ 6. In April and October of 1997 he requested an accommodation from the Corporate Chief of Human Resources in New York. Def. Ans. ¶ 7. Nawrot asked the Plant Manager on three occasions for an accommodation in September 1997, May 1998, and July 1998. Def. Ans. ¶ 8. He even personally handed a letter to the Chief Executive Officer in April 1998 explaining his request to stop working if he feels the onset of an insulin reaction. P. App. Att. C at ¶ 13; Def. Ans. ¶ 9. Finally, after receiving no accommodation and being terminated, on October 23, 1998 Nawrot filed discrimination charge with the EEOC under the ADA and the ADEA. Pl. Am. R. ¶ 3.

For the purposes of this motion only, Bestfoods concedes that it did not accommodate Nawrot's disability. Def. Ans. ¶ 21, 25; Def. Sup. Rep at 3. Hence, Nawrot was never able to use his meter at work increasing his risk of diabetic reaction, and he was not allowed to eat or drink on the plant floor. Def. Ans. ¶ 21, 25. Bestfoods admits that Nawrot performed his essential job functions with or without accommodation. Def. Ans. ¶ 32. Therefore, factual disputes as to whether Nawrot received an accommodation or responses to his requests are immaterial for purposes of this motion.

Bestfoods contends that even if it failed to accommodate, Nawrot does not state a claim because Nawrot did not suffer an adverse employment action resulting from his disability and because Nawrot did not require an accommodation to perform his essential job functions. The only adverse employment action was Nawrot's termination which was done for "legitimate, nondiscriminatory reasons." *Nawrot*, 277 F.3d at 907. Bestfoods terminated Nawrot for misconduct, harassing and stalking a fellow employee, and aiding her in the arbitration against Bestfoods. *Id*.

## III. DISCUSSION

### A. LEGAL STANDARD

A court will grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Doe v. R. R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) Initially, the moving party must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth facts showing that there is a genuine issue for trial. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 610 (7th Cir. 2001). In deciding a summary judgment motion, the court

6

reads the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## B.    NAWROT IS NOT REQUIRED TO SHOW AN ADVERSE EMPLOYMENT ACTION BECAUSE HIS CLAIM IS BASED SOLELY ON BESTFOODS' FAILURE TO ACCOMMODATE HIS DISABILITY

The first issue before this Court is whether a failure to accommodate claim can survive summary judgment where the employee cannot show that he suffered an adverse employment action because of his disability.

### 1.    The ADA and its Purpose

Nawrot contends that Bestfoods violated the ADA by not granting his requests to take breaks allowing him to monitor and maintain his blood sugar level. Nawrot requested breaks to check his blood sugar level, eat certain foods and administer insulin injections. Because his requests for breaks were refused, Nawrot suffered hypoglycemic attacks at work causing collapse and altering his capacity to think clearly and act appropriately.

Nawrot's ADA claim is based on 42 U.S.C. §§ 12112(a) and 12112(b)(5)(A). Section 12112(a) states:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Section 12112(b)(5)(A) states that discriminate includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]

7

42 U.S.C. § 12112(b)(5)(A)

The ADA is designed to "remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities." Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act 29 C.F.R. pt. 1630 (2003). Employers are required to consider whether a reasonable accommodation could remove barriers to employment opportunities created by the disability. *Id.* "The obligation to make reasonable accommodation is a form of non-discrimination." Interpretive Guidance on Title I of the ADA 29 C.F.R. app. pt. 1630.9. This requirement is best understood as a "means by which barriers to the equal employment opportunity of an individual with a disability are removed or alleviated." *Id.*

2. **For Reasonable Accommodation Claims, The *Prima Facie* Case Does Not Require An Adverse Employment Action.**

The parties rely on two different cases to support their constructions of the *prima facie* case for failure to accommodate. Nawrot relies upon *Gile v. United Airlines, Inc.*, 213 F.3d 365 (7th Cir. 2000), asserting that this claim does not require an adverse employment action. Bestfoods relies upon *Foster v. Arthur Anderson, LLP*, 168 F.3d 1029 (7th Cir. 1999) to establish that an adverse employment action is necessary for all reasonable accommodation claims. This Court finds that *Gile* is on point and that *Foster* is inapposite.

Gile, a night shift data entry operator, suffered chronic depression, anxiety, and fatigue. *Gile*, 213 F.3d at 368-70. She requested a transfer to the day shift because working evenings was a major factor in her condition. *Id.* at 369-70. United refused her request. *Id.* After obtaining a work release, Gile requested and was placed on authorized leave. *Id.* at 370. Subsequently she received a termination letter which her employer later admitted was erroneous. *Id.* at 370-71. After roughly fifteen months she returned to United and immediately joined the day shift. *Id.* Before she returned to work Gile sued for her employer's failure to accommodate her disability by transferring her to the day shift. *Id.* at 371. The district court granted United's summary judgment motion; but the Seventh Circuit vacated and remanded. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)

The district court erroneously concluded that "United was only obligated to reassign Gile to a position inside her department or to a position to which she had previously requested transfer." *Id.* Limiting her discovery accordingly was overly restrictive: Gile was entitled to discover "evidence regarding any vacancies for which she qualified and to which United could have reassigned her." *Id.* The parties did not dispute whether she was disabled or required accommodation and the Court of Appeals did not require Gile to prove an adverse employment action. *See id.* at 496. Hence, Gile was given a chance to satisfy the final element of her *prima facie* case: showing she was denied a reasonable accommodation that would not create an undue hardship. *See id.* at 496-99.

At trial, the jury ruled in Gile's favor. *Gile*, 213 F.3d at 371. Challenging the jury award, United argued on appeal that the jury lacked sufficient evidence to find that Gile was

9

a qualified individual, and that Gile was responsible for a breakdown in the interactive accommodation process. *Id.* at 372-73. The Court of Appeals disagreed with both arguments and affirmed the jury award of compensatory damages but reversed as to punitive damages. *Id.* at 376. Without spelling out the failure to accommodate *prima facie* case, the Seventh Circuit explained Gile's claim: "United failed its duty of reasonable accommodation because it took no action other than to reject Gile's request. By refusing her request and assuming no further duty to accommodate because its shift bidding process was in place, United failed its ADA obligation." *Id.* at 374.

While the *Gile* decisions demonstrate that a failure to accommodate claim does not require proving an adverse employment action, the Court of Appeals did not specifically enumerate the claim's elements. Following the first *Gile* decision the Seventh Circuit clarified these elements: "To make out a claim under the ADA, an individual must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability *or* failed to make a reasonable accommodation." *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000) (emphasis added) (citing *Gile*, 95 F.3d at 496) (holding that the "ADA does not abrogate the States' Eleventh Amendment immunity" and that a department of the State of Illinois is protected by this immunity); *see Bond v. Sheahan*, 152 F.Supp.2d 1055, 1062-63, 1071-75 (N.D. Ill. 2001) (denying summary judgment on issue of whether defendant reasonably accommodated plaintiff's asthma by failing to transfer her and by failing to enforce a non-

smoking policy).

Relying on *Foster*, Bestfoods argues that all failure to accommodate claims require an adverse employment action. There the Seventh Circuit wrote:

> to state a *prima facie* case of "failure to accommodate" disability discrimination, a plaintiff who has suffered an adverse employment action must show that: (1) she was or is disabled; (2) the defendant was aware of her disability; (3) she was otherwise qualified for her job; and (4) the disability caused the adverse employment action (a factor which is implied if not stated).

*Foster*, 168 F.3d. at 1032 (internal citations omitted). Bestfoods asserts that this passage requires Nawrot to prove this fourth element.

Foster was terminated because she violated company attendance rules. *Id.* at 1032, 1034. Her EEOC charge alleged she was terminated because of her disability, yet she filed a failure to accommodate claim, not a claim for disparate treatment. *Id.* at 1032. Evidently, Foster believed that she would not have violated company procedures had the defendant accommodated her disability. Nawrot does not allege this nexus between the failure to accommodate and his termination. This difference is significant. The *Foster prima facie* case is prefaced with the phrase, "*a plaintiff who has suffered an adverse employment action must show that . . .*" *Id.* (emphasis added). Therefore, the *prima facie* case in *Foster*[2] is limited to a plaintiff who has suffered an adverse employment action. *Foster* is inapposite

---

[2] The focus of *Foster*'s discussion of the fourth element was the phrase "because of." *Id.* at 1033. This element was significant in *Foster* because the defendant claimed it terminated Foster "because of her violation of company policy, not because of her disability." *Id.* Accordingly, "to state a case of failure to accommodate disability discrimination, a plaintiff who has suffered an adverse employment action must show that. . . the disability caused the adverse employment action." *Id.* at 1032. Nawrot does not need to show this causation since he does not base his claim on an adverse employment action.

because Nawrot's claim is based solely on Bestfoods' failure to accommodate.

The argument that *Foster* requires all failure to accommodate claims to show an adverse employment action was recently rejected by Judge Phillip G. Reinhard. *Nichols v. Unison Indus., Inc.*, No. 99 C 50194, 2001 WL 849528, at *6(N.D. Ill. July 24, 2001)[3]. Nichols, a welder with a heart condition, requested hourly breaks. *Id.* at *2. Nichols did not base his claim on an adverse employment action. *Id.* at *6 His claim was based "solely on the principle that he requested a reasonable accommodation–hourly five-minute breaks–and [his employer] failed to always grant his request." *Id.* Hence the court found *Foster* inapposite. *Id.* Nawrot's claim is similar to Nichols'. Both filed reasonable accommodation claims and do not base that claim on an adverse employment action. The correct *prima facie* case for Nawrot's claim is set forth in *Stevens* and does not require an adverse job action. 210 F.3d at 736. See also, *Rauen v. U. S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895-96 (7th Cir. 2003) ("Therefore, to prevail on her ADA claim [Plaintiff] must show that she has a disability, that she is 'otherwise qualified' for the job, and that her employer refused to make a 'reasonable accommodation' for her disability.") This Court holds that Nawrot is not required to prove an adverse employment action as part of his failure to accommodate *prima*

---

[3] Summary judgment was granted in favor of Nichols's employer because he did not need the accommodation to perform the essential functions of his job, to seek treatment, or to avoid personal harm. *Nichols*, 2001 WL 849528, at *8. Also, Nichols could not show that he was denied an employment benefit or privilege. *Id. Nichols* does not contradict this Court's decision that Nawrot is not required as a matter of law to show that he needed an accommodation to perform his essential job functions: unlike Nawrot, Nichols did not show he needed the accommodation for other relevant reasons like seeking treatment.

12

*facie* case.

### 3. Statutory Construction of the ADA Supports the Conclusion That an Adverse Employment Action Is Not Required As Part of a Failure to Accommodate Claim.

Bestfoods argues that inserting § 12112(b)(5)(A) into the general rule shows Nawrot must prove he suffered an adverse employment action because of his disability. Bestfoods contends the reasonable accommodation clause should replace the italicized language in the following:

> No covered entity shall *discriminate against a qualified individual with a disability* because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment. (Emphasis added).

42 U.S.C. § 12112(a). Section 12112(b)(5)(A) provides that the term "discriminate" includes:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business . . .

Bestfoods contends that there is no separate action for a failure to accommodate, and that an adverse action is a necessary element of a failure to accommodate claim just as all other types of ADA claims by reason of the "because of the disability" language found in 42 U.S.C. § 12112(a).

Bestfoods' conclusion does not mesh with a complete reading of § 12112 or with the purposes of the reasonable accommodation requirement. The subsections under § 12112(b)

13

cannot be interpreted as literal word for word substitutes for the term discriminate in subsection (a). Some subsections contain the "because of" phrase and do not rely on that language as supplied in subsection (a). For example, the ADA forbids "limiting, segregating, or classifying . . . an employee . . . *because of* the disability of such applicant or employer[.]" 42 U.S.C. § 12112(b)(1) (emphasis added). Also, the ADA prohibits employers "excluding or otherwise denying equal jobs or benefits to a qualified individual *because of* the known disability . . ." 42 U.S.C. § 12112(b)(4) (emphasis added). These subsections require an adverse action by the employer taken because of the employee's disability.

However, not all subsections include the "because of" phrase. There are two reasonable accommodation subsections. The first requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . ." 42 U.S.C. § 12112(b)(5)(A). The second prohibits "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant[.]" 42 U.S.C. § 12112(b)(5)(B). The regulations clarify that § 12112(b)(5)(B) requires a plaintiff to show he was denied an employment opportunity because the employer knew he would require a reasonable accommodation. 29 C.F.R. App. § 1630.9. Subsection (b)(5)(A) creates an affirmative duty for employers to reasonably accommodate employee disabilities.

14

Where ADA language is similar to Title VII religious discrimination clauses, Title VII cases provide analogous case law for ADA decisions.[4] *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 403 (2002); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977). In Title VII religion cases plaintiffs are not required to prove adverse employment actions to state a claim. *Hardison*, 432 U.S. at 74. ("The intent and effect of [the] definition was to make it an unlawful employment practice under § 703(a)((1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.")

Bestfoods' construction of the ADA subsections creates employer liability only if the employee suffered an adverse employment action because of his disability. Under this construction an employer would not be liable in situations where known disabilities are not accommodated simply for management's laziness or cost benefit analysis. The ADA requires employers to accommodate employee's disabilities whether or not the failure to do so is based on some discriminatory animosity toward the employee's disability. Bestfoods cannot escape liability under the ADA just because its failure to accommodate did not result in an adverse employment action to Nawrot. The *Stevens prima facie* case clarifies that an ADA claim can be based on an adverse action because of the disability or a failure to

_____

[4]ADA reasonable accommodation claims are nearly identical to the corresponding Title VII section. Title VII makes it an unlawful employment practice to discriminate on the basis of religion, 42 U.S.C. § 2000e-2, "unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

accommodate.

## C. NAWROT HAS A CLAIM UNDER THE ADA WHETHER OR NOT THE REQUESTED ACCOMMODATION IS NECESSARY TO PERFORM ESSENTIAL JOB FUNCTIONS.

Bestfoods argues Nawrot cannot state an ADA claim because he did not need the requested accommodation and he performed his essential job functions without accommodation. Bestfoods claims an employee who does not need an accommodation to accomplish his essential job functions cannot establish a failure to accommodate claim. *See Black v. Wayne Ctr.*, Nos. 99 C 1225, 99 C 1249, 2000 WL 1033026, at *3 (6th Cir. July 17, 2000) (holding that a plaintiff who can perform his job without an accommodation cannot demonstrate the reasonableness of any accommodation); *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 897 (7th Cir. 2003) (affirming district court's decision to grant summary judgment for employer, but on the ground that the requested accommodation was not reasonable).

Summary judgment is not proper because even if Nawrot was required to show that he needed the accommodation to perform his essential job functions, a question of material fact remains. This Court cannot say as a matter of law that Nawrot did not need the accommodation to perform his job functions. Nawrot has pointed to evidence in the record that he has collapsed at work and is unable to think clearly when suffering from a diabetic attack. Without an accommodation Nawrot may collapse and be unable to perform his essential job functions. Also, a question of fact remains for trial: whether Nawrot's diminished capacity to think clearly while suffering a diabetic reaction was a barrier to

16

performing his essential job functions and whether this barrier could have been removed or alleviated by a reasonable accommodation.[5]

In the alternative, Nawrot is not required to show that he needed his requested breaks to help him perform essential job functions. *Rauen* left open the question whether a disabled employee who does not need an accommodation to perform his essential duties can establish a failure to accommodate claim. *Rauen*, 319 F.3d at 897. An employee's ability to perform all essential job functions without accommodation is a factor weighing against the reasonableness of an accommodation, not necessarily a complete bar to any claim by an employee needing to take insulin shots to prevent diabetic reactions. *See id.* at 897.

Rehabilitation Act decisions[6] also show that the ADA requires employers to make accommodations unrelated to the employee's essential job functions. Under the Rehabilitation Act, an employer is required to grant accommodations which make it possible for disabled employee to: (1) perform the essential functions of the job, (2) pursue therapy

___

[5] Bestfoods argues that because Nawrot admits to being a qualified individual who can perform the essential functions of his job without an accommodation, his claim fails since he cannot prove he needs the accommodation to perform essential job function. Nawrot does not admit, however, that he is able to perform his essential job functions while suffering a diabetic reaction. And he does not admit that the accommodation would not help him perform his essential job functions. He merely admits he is able to perform his essential duties with or without accommodation, a necessary element of every accommodation claim.

[6] "Reasonable accommodation" is one of the provisions taken from regulations issued by the EEOC to implement the Rehabilitation Act. *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995). The decisions interpreting these regulations are examined to find the meaning of the same terms used in the ADA. *Id.* (the employment provisions of the ADA "merely generalize to the economy as a whole the duties, including that of reasonable accommodation, that the regulations under the Rehabilitation Act imposed on federal agencies and federal contractors").

or treatment for the disability; or (3) enjoy the privileges and benefits of employment equal to those enjoyed by non-disabled employees. *Fedro v. Reno*, 21 F.3d 1391, 1395-96 (7th Cir. 1994); *see McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992) ("The Rehabilitation Act calls for reasonable accommodations that permit handicapped individuals to lead normal lives, not merely accommodations that facilitate the performance of specific employment tasks"). The Rehabilitation Act does not require that the accommodation specifically help the employee perform essential job functions.

The ADA has an identical purpose as to the Rehabilitation Act: to remove barriers preventing disabled employees from enjoying the same employment opportunities available to non-disabled employees. 29 C.F.R. § 1630; 29 U.S.C. § 701(8) (stating that the purpose of the Rehabilitation Act is "promoting and expanding employment opportunities in the public and private sectors for handicapped individuals"). This purpose is reflected in the types of accommodations the EEOC enumerates in its guidelines. The EEOC identifies three categories of accommodations: "(1) accommodations that are required to ensure equal opportunity in the application process; (2) accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and (3) accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." 29 § 1630.2(o) app. Category three shows that accommodations are required reasons other than essential job functions (which is covered in category two). These include "providing additional unpaid leave for necessary treatment." *Id.* Accommodations for

treatment for a disability are the type which may not specifically help someone perform the essential functions of his job, but which are required by the ADA.

*Rauen* left the door open for employees like Nawrot, who needs an accommodation to live regardless of his essential job functions. The analogous Rehabilitation Act cases demonstrate that the ADA requires accommodations for employees like Nawrot whether or not he needs the accommodation for his essential job functions. Whether Nawrot is employed as a warehouse supervisor, an airline pilot, or an accountant, he will need to check his blood sugar levels and administer insulin several times a day. No matter what his job duties, he will always need this accommodation. To hold that a person with potentially life threatening diabetes is not entitled to accommodations so that he may monitor his blood sugar levels would force diabetics like Nawrot to choose between working while risking physical harm and death, or unemployment. The ADA was created to prohibit placing disabled persons in this position.

## D.  NAWROT'S CLAIM IS NOT BARRED BY THE 300-DAY FILING PERIOD

A failure to timely file a charge with the EEOC bars a later cause of action. 42 U.S.C.A. § 2000e-5(e)(1); *Casteel v. Executive Bd. Of Local 703 Of The Int'l Bhd. Of Teamsters*, 272 F.3d 463, 466 (7th Cir. 2001). Where filed with a state or local agency, a plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory activity. 42 U.S.C.A. § 2000e-5(e)(1). Bestfoods argues in its initial memorandum in support of summary judgment that Nawrot's claim is time barred because he has not alleged any adverse employment action within 300 days of his EEOC charge.

19

As established above, actionable discrimination is not limited to adverse employment actions taken by employers because of employee disabilities. Under the ADA discrimination includes "not making reasonable accommodations." 42 U.S.C. 12112(b)(5)(A). Nawrot filed his EEOC charge on October 23, 1998 and he was denied requested accommodations within the prior 300 day period. He handed a written request for an accommodation to Bestfoods' CEO in April of the same year, and made requests of the Plant Manager and Plant Human Resources Manager in May–a month during which he suffered a diabetic reaction. Therfore, Nawrot has alleged discrimination by his employer during the 300-day period and his claim is not time barred.

## VI. CONCLUSION

An ADA claim for an employer's failure to accommodate plaintiff's disability does not require a plaintiff to suffer an adverse employment action. To make his *prima facie* case, Nawrot must show 1) that he has a disability; 2) that he is "otherwise qualified" for the job; and 3) that Bestfoods failed to make a "reasonable accommodation" to his known disability. The accommodation issue raises questions of fact for trial. **As a result, Defendant's motion for summary judgment is denied.**

**SO ORDERED THIS 23RD DAY OF APRIL, 2003.**

**MORTON DENLOW**
**United States Magistrate Judge**

20

**Copies mailed to:**


Mr. Daniel Cannon
KUSPER & RAUCCI, CHTD.
30 North LaSalle Street
Suite 3400
Chicago, IL 60602

Herbert H. Victor
30 North LaSalle Street
Suite 3400
Chicago, IL 60602

Attorneys for Plaintiff

Marc R. Jacobs
D'ANCONA & FLAUM, LLC
111 East Wacker Drive
Suite 2800
Chicago, IL 60601

**Attorney for Defendant**